IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **NATIONAL ASSOCIATION FOR GUN RIGHTS, and FOSTER ALLEN HAINES,** § § § § | | |
| **Plaintiffs,** § § | | |
| v. § § | CASE NO. _____ | |
| **MICHELLE LUJAN GRISHAM, in her official capacity as the Governor of the State of New Mexico, and PATRICK M. ALLEN, in his official capacity as the Secretary of the New Mexico Department of Health,** § § § § § § § § | | |
| **Defendants.** | | |

## MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs National Association for Gun Rights ("NAGR") and Foster Allen Haines ("Haines") submit the following motion for temporary restraining order against Defendants Michelle Lujan Grisham ("Governor Grisham") and Patrick M. Allen ("Secretary Allen").

### INTRODUCTION

On September 8, 2023, Secretary Allen issued the PHE Order (defined below), which contains the Carry Prohibition (defined below). The Carry Prohibition is blatantly unconstitutional. Therefore, Plaintiffs hereby respectfully move the Court to enter a temporary restraining order enjoining enforcement of the Carry Prohibition.

1

# FACTS

1. Governor Grisham issued Executive Order 2023-130 (the "Executive Order") on September 7, 2023. A copy of the Executive Order is attached as Exhibit A to the Complaint. In the Executive Order Governor Grisham declared that a state of emergency exists in in New Mexico due to gun violence.

2. Based on the Executive Order, Secretary Allen issued "Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures" dated September 8, 2023 (the "PHE Order"). A copy of the PHE Order is attached to the Complaint as Exhibit B.

3. The PHE Order states in relevant part (which portion shall be referred to herein as the "Carry Prohibition"):

> (1) No person, other than a law enforcement officer or licensed security officer, shall possess a firearm, as defined in NMSA 1978, Section 30-7-4.1, either openly or concealed, within cities or counties averaging 1,000 or more violent crimes per 100,000 residents per year since 2021 according to Federal Bureau of Investigation's Uniform Crime Reporting Program AND more than 90 firearm-related emergency department visits per 100,000 residents from July 2022 to June 2023 according to the New Mexico Department of Public Health, except:
>
>    A. On private property owned or immediately controlled by the person;
>
>    B. On private property that is not open to the public with the express permission of the person who owns or immediately controls such property;
>
>    C. While on the premises of a licensed firearms dealer or gunsmith for the purpose of lawful transfer or repair of a firearm;
>
>    D. While engaged in the legal use of a firearm at a properly licensed firing range or sport shooting competition venue; or

> E. While traveling to or from a location listed in Paragraphs (1) [*sic*] through (4) [*sic*] of this section; provided that the firearm is in a locked container or locked with a firearm safety device that renders the firearm inoperable, such as a trigger lock.

4. For purposes of this motion, a city or county in New Mexico that averaged 1,000 or more violent crimes per 100,000 residents per year since 2021 according to Federal Bureau of Investigation's Uniform Crime Reporting Program AND more than 90 firearm-related emergency department visits per 100,000 residents from July 2022 to June 2023 according to the New Mexico Department of Public Health shall be referred to as an "Affected Area."

5. For purposes of this motion, the following shall be referred to as "Plaintiffs' Proposed Conduct": (a) possessing firearms in public for lawful purposes, including self-defense; and (b) going to private businesses open to the public while lawfully carrying a firearm for lawful purposes, including self-defense, without first obtaining the express affirmative permission of the person who owns the property.

6. Plaintiff NAGR is a nonprofit organization that seeks to defend the right of all law-abiding individuals to keep and bear arms. Declaration of Ryan Flugaur, ¶ 5. NAGR has members who reside in New Mexico and in an Affected Area. *Id.* NAGR represents the interests of these members. *Id.* Specifically, NAGR represents the interests of those who are affected by the Carry Prohibition's blatantly unconstitutional prohibition on Plaintiffs' Protected Conduct in Affected Areas. *Id.* It is these members' present intention and desire immediately to engage in Plaintiffs' Protected Conduct in Affected Areas. *Id.* These members are precluded

from doing so by the Carry Prohibition, which deprives them of their fundamental right to keep and bear arms for lawful purposes protected by the Second Amendment. *Id.*

7. Plaintiff Haines lives in an Affected Area, specifically Albuquerque, New Mexico. Declaration of Foster Haines, ¶ 2, 4. Haines is an adult and has never been convicted of any crime. Declaration of Foster Haines, ¶ 4. Haines is affected by the Carry Prohibition's blatantly unconstitutional prohibition on law-abiding adults engaging in Plaintiffs' Proposed Conduct in an Affected Area. *Id.* It is Haines' present intention and desire immediately to engage in Plaintiffs' Proposed Conduct in an Affected Area. *Id.* Haines is precluded from doing so by the Carry Prohibition, which deprives him of his fundamental right to keep and bear arms for lawful purposes protected by the Second Amendment. *Id.*

8. Defendant Governor Grisham is the Governor of the State of New Mexico. This action is brought against her in her official capacity.

9. Defendant Secretary Allen is the Secretary of the New Mexico Department of Health. This action is brought against him in his official capacity.

10. Under New Mexico law, Defendants are charged with enforcing the Carry Prohibition. Defendants are enforcing and will continue to enforce the unconstitutional Carry Prohibition against Plaintiffs under color of state law within the meaning of 42 U.S.C. § 1983.

## ARGUMENT

### I.  Standard for Temporary Restraining Order

The requirements for issuance of a TRO are essentially the same as those for a preliminary injunction order. *See People's Trust Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018). For injunctive relief to enter, a party must must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest.  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).

### II.  Plaintiffs Are Overwhelmingly Likely to Prevail on the Merits

#### A.  Legal Framework for Second Amendment Claims

*Bruen* states that the appropriate test for applying the Second Amendment is: "[1] When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. [2] The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.*, 142 S. Ct. at 2129-30 (internal citation and quotation omitted).

### B. The Plain Text of the Second Amendment Covers Plaintiffs' Conduct

In *Bruen*, the Court wrote: "We therefore turn to whether the plain text of the Second Amendment protects [plaintiffs'] proposed course of conduct – carrying handguns publicly for self-defense. We have little difficulty concluding that it does." 142 S. Ct. at 2134. The Carry Prohibition flatly prohibits Plaintiffs from carrying handguns (or any other firearm) in public for self-defense. Therefore, Plaintiffs' burden under step one of the *Bruen* analysis is easily met for the same reason it was met in *Bruen*. Hence, the Constitution presumptively protects Plaintiffs' Proposed Conduct. Another way of saying the same thing is that the Carry Prohibition is presumptively unconstitutional.

### C. The Government Cannot Carry its Burden Under *Bruen's* Step Two

#### 1. Introduction

The Carry Prohibition is only *presumptively* unconstitutional under *Bruen's* step one. The government can still save it if it is able to demonstrate that the Carry Prohibition is consistent with the Nation's historical tradition of firearm regulation. *Id.*, 142 S. Ct. at 2129-30. It is not.

As set forth above, Plaintiffs' Proposed Conduct at issue in this case has two aspects: (a) possessing firearms in public for lawful purposes, including self-defense in an Affected Area; and (b) going to private businesses in an Affect Area open to the public while lawfully carrying a firearm for lawful purposes, including self-defense,

without the express affirmative permission of the person who owns the property. Plaintiffs will address each aspect separately.

## 2. Flat Prohibition on Public Carry is Unconstitutional

In *Bruen*, the State of New York conceded a general right to public carry. *Id.*, 142 S. Ct. at 2135. Instead, New York argued that that the Second Amendment permits a state to condition handgun carrying in certain areas on a showing of a "need" for self-defense in those areas. *Id*. The Court held that to "support that claim, the burden falls on respondents to show that New York's proper-cause requirement is consistent with this Nation's historical tradition of firearm regulation." *Id*. After an exhaustive analysis of the relevant historical tradition, the Court held that New York failed to demonstrate that its law was consistent with the Nation's historical tradition of firearm regulation. *Id.*, 142 S. Ct. at 2156.

The analysis regarding the first aspect of Plaintiffs' Proposed Conduct (public carry) is extraordinarily simple. It involves a straightforward "a fortiori" conclusion. If New York's "proper-cause" requirement for public carry failed *Bruen's* second step, New Mexico's flat prohibition of public carry under any circumstances necessarily fails *Bruen's* second step as well. The Court can reach this conclusion without reviewing any of the relevant history, because as a matter of simple logic it is not possible for New Mexico to demonstrate that a flat prohibition on public carry is consistent with history and tradition when even a proper cause requirement for public carry was not.

7

### 3. Prohibition on Entry onto Publicly Accessible Private Property Unconstitutional

The second aspect of Plaintiffs' Proposed Conduct need not detain the Court long either. Plaintiffs desire to go to private businesses open to the public while lawfully carrying a firearm for lawful purposes, including self-defense, without first obtaining the express affirmative permission of the person who owns the property. The Carry Prohibition prohibits that conduct. Last month, in *Wolford v. Lopez*, 2023 WL 5043805 (D. Haw. Aug. 8, 2023), the court issued a TRO and preliminary injunction enjoining a practically identical Hawaii law. Hawaii argued that there was historical support for its prohibition on carriage on private property without consent. *Id*. at *27. After examining the historical record submitted by the state, the court rejected its argument. It wrote:

> The State's reliance on these laws is therefore unpersuasive. The State has not established that the portion of [the statute] that prohibits carrying firearms on private property held open to the public is consistent with this Nation's historical tradition of gun regulation. Because the State has not met its burden, Plaintiffs are likely to succeed on the merits of their challenge to [the statute] to the extent that [the statute] prohibits carrying firearms on private property held open to the public.

*Id*. at *29.

The historical record has not changed since last month. Like Hawaii, New Mexico will not be able to show that the Carry Prohibition's prohibition on lawfully carrying firearms into private businesses in Affected Areas open to the public without first obtaining the express affirmative permission of the person who owns the property is consistent with this Nation's historical tradition of gun regulation.

8

There is no such historical tradition. Therefore, the State is unable to carry its burden.

### D. Summary: Plaintiffs Will Succeed on the Merits

In summary, Plaintiffs' Proposed Conduct is presumptively protected by the Constitution under *Bruen's* first step. New Mexico will not be able to carry its burden under *Bruen's* second step. Its regulation prohibiting Plaintiffs' Proposed Conduct is not consistent with the Nation's historical tradition of firearms regulation. Therefore, Plaintiffs are likely to succeed on the merits of their claim that the Carry Prohibition violates their constitutional rights.

## III. The Remaining Factors Favor Entry of Injunctive Relief

### A. Plaintiffs Have Suffered Irreparable Harm

Plaintiffs have established that they will prevail on the merits of their constitutional claim. Violation of constitutional rights per se constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (loss of constitutional freedom "for even minimal periods of time" unquestionably constitutes irreparable injury). Only days ago, the Ninth Circuit applied the *Elrod* principle in the Second Amendment context. *Baird v. Bonta,* 2023 WL 5763345, at *3 (9th Cir. Sept. 7, 2023). In *Baird*, the court held that in cases involving a Second Amendment claim, a likelihood of success on the merits usually establishes irreparable harm. *Id*., at *9. Moreover, such a likelihood, "strongly tips the balance of equities and public interest in favor of granting" an injunction. *Id. See also Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (also applying principle in Second Amendment context); and

*Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805 (10th Cir. 2019) ("Most courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury."); *Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020) (collecting cases); and *New Mexico Cattle Growers' Assn v. United States Forest Serv.*, 2023 WL 2185698, at *3 (D.N.M. Feb. 22, 2023) (noting that violation of a constitutional right "standing alone" constitutes irreparable injury).

### B. The Balance of Harms and Public Interest Factors Support Entry of Injunctive Relief

Finally, the balance of harms and public interest factors[1] favor injunctive relief. A plaintiff's likelihood of success on the merits of a Second Amendment claim tips the merged third and fourth factors decisively in his favor, because "public interest concerns are implicated when a constitutional right has been violated, [and] all citizens have a stake in upholding the Constitution." *Baird v. Bonta*, 2023 WL 5763345, at *4 (9th Cir. Sept. 7, 2023) (internal citation and quotation marks omitted; cleaned up). In *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010), the Tenth Circuit held that when applying these factors courts must be mindful that even if a state is pursuing a legitimate goal (in that case deterring illegal immigration), it has no interest in doing so by unconstitutional means, because a state "does not have an interest in enforcing a law that is likely constitutionally infirm." *Id.* "Moreover, the public interest will perforce be served by

---

[1] These factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

enjoining the enforcement of the invalid provisions of state law." *Id.* (internal quotation marks and citation omitted). *See also Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001) (public interest favors preliminarily enjoining state statutes likely to be held unconstitutional).

Defendants may argue the Carry Prohibition should not be enjoined for public safety reasons. Plaintiffs disagree that the Carry Prohibition will have any measurable effect on public safety. After all, the problem the Carry Prohibition seeks to address is criminal conduct. Yet, the Carry Prohibition affects only law-abiding citizens seeking to exercise their right to self-defense, while criminals will simply ignore it.

But even in the unlikely event the order might have some marginal affect on public safety, that fact would be irrelevant under *Bruen*. Indeed, the government's argument is in effect a backdoor means-end test of the type rejected by *Bruen*. 142 S. Ct. at 2129 (rejecting means-end scrutiny in Second Amendment cases). "[T]he government may not simply posit that the regulation promotes an important interest [such as public safety]. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*, 142 S. Ct. 2126. *Bruen's* rejection of means-end scrutiny would be nullified if courts were to eschew such scrutiny while examining the merits of a Second Amendment claim, only to bring such scrutiny right back in when determining whether to grant a remedy for a constitutional violation. Moreover, "[w]hile the public has an interest in enforcing laws that promote safety or welfare, the public

has no cognizable interest in enforcing laws that are unconstitutional. Indeed, the public interest is best served by preventing an unconstitutional enforcement." *Midwest Title Loans, Inc. v. Ripley*, 616 F. Supp. 2d 897, 908 (S.D. Ind. 2009), *aff'd sub nom. Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660 (7th Cir. 2010) (cleaned up) (*citing Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003)).

## IV. A Bond is not Necessary

Courts in the Tenth Circuit have wide discretion under Rule 65(c) in determining whether to require security and may, therefore, impose no bond requirement. *New Mexico Cattle Growers' Ass'n v. United States Forest Serv.*, 2023 WL 2185698, at *3 (D.N.M. Feb. 22, 2023) (internal citations and quotation marks omitted). A bond is unnecessary in a case that seeks to enforce a constitutional right against the government. *Rocky Mountain Gun Owners v. Polis*, 2023 WL 5017253, at *20 (D. Colo. Aug. 7, 2023). Therefore, Plaintiffs respectfully request that no bond requirement be imposed.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to enter a temporary restraining order enjoining enforcement of the unconstitutional provisions of the Carry Prohibition. Plaintiffs have attached a form of TRO.

    Respectfully submitted,

    VALDEZ AND WHITE LAW FIRM, LLC

    /s/ Timothy L. White
    Timothy L. White

124 Wellesley Drive SE
Albuquerque, N.M. 87106
Telephone: (505) 345-0289
tim@valdezwhite.com


Barry K. Arrington*
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
Voice: (303) 205-7870
Email: barry@arringtonpc.com
*admission pro hoc vice forthcoming

Attorneys for Plaintiffs