EXHIBIT "A"

**STATE OF NEW MEXICO**
OFFICE OF THE ATTORNEY GENERAL



**RAÚL TORREZ**
**ATTORNEY GENERAL**

September 12, 2023

The Honorable Michelle Lujan Grisham
Governor of New Mexico
State Capitol
490 Old Santa Fe Trail, Room 400
Santa Fe, NM 87501

> In Re: Nat'l Ass'n for Gun Rights v. Grisham, No. 1:23-CV-00771; Blas v. Grisham, No. 1:23-CV-00774; Donk v. Grisham, No. 1:23-CV-00772; We the Patriots USA, Inc. et al v. Grisham et al, No. 1:23-CV-00773

Dear Governor Lujan Grisham:

I am writing to inform you that my office will not defend your administration in the above referenced cases challenging the Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures (the Emergency Order) issued by the Secretary of Health on September 8, 2023. Though I recognize my statutory obligation as New Mexico's chief legal officer to defend state officials when they are sued in their official capacity, my duty to uphold and defend the constitutional rights of every citizen takes precedence. Simply put, I do not believe that the Emergency Order will have any meaningful impact on public safety but, more importantly, I do not believe it passes constitutional muster.

As a career prosecutor I have grieved with too many victims of gun violence in New Mexico not to share your anger and frustration at the unacceptable toll that gun violence has exacted, especially among the youngest members of our community. The tragic deaths of 5-year-old Galilea Samaniego in a recent drive-by shooting and 11-year-old Froylan Villegas in a road rage incident should serve as a wakeup call to everyone. However, I encourage you to engage in a more thoughtful and deliberative process with members of the New Mexico Legislature rather than taking unilateral action that infringes on the constitutional rights of law-abiding citizens while having little if any discernible impact on the underlying dynamics driving gun violence in our community.

The Emergency Order prohibits the possession of a firearm for anyone other than law enforcement and security officers except on private property owned by the person or with

express consent of the owner, on the premises of a firearms dealer or gunsmith for lawful transfer or repair, at a licensed firing range or sport shooting venue, or while traveling to those locations with the firearm kept in a locked container or locked with a firearm safety device. In short, the Order prevents individuals from carrying firearms in public for the purpose of self-defense. The attempted reach of this Order, despite currently being limited to Bernalillo County, is highly problematic because it purports to alter lawful firearm possession in ways that are inconsistent with the Federal and State Constitutions.

I agree with the need to "start a debate" about the devastating impact that gun violence is having on our citizens, especially our children, but the issuance of an executive order in violation of core constitutional principles is not the appropriate method for bringing about such a debate, and its flawed legal foundation is likely to obscure, rather than highlight, meaningful solutions. First, the Order's reliance on the Public Health Emergency Response Act (PHERA) distorts that law's meaning beyond its intended purpose of protecting the public from the "imminent threat of exposure to an extremely dangerous condition or a highly infectious or toxic agent, including a threatening communicable disease." NMSA 1978, § 12-10A-3(G). Second, simply rebranding gun violence as a "public health emergency" will not satisfy the heightened judicial standard for justifying the blanket prohibition against any citizen, regardless of criminal conduct or intent, from carrying a firearm for personal protection.

While no one doubts the devastating impact that gun violence has had on our community over the last several years, it is not clear that that problem is properly defined as a "public health emergency" as that term is used within the PHERA. Moreover, even if the problem is properly categorized as a "public health emergency," the data do not support the conclusion that gun violence in our community is attributable to otherwise law-abiding citizens exercising their constitutional right to carry firearms for protection outside the home. As the former Bernalillo County District Attorney, I agree with your assessment that "responsible gun owners are certainly not our problem (and) have never been our problem." Given that only responsible gun owners are likely to abide, much less recognize your ban, it is unclear how this action will lead to a measurable decline in gun violence in our community.

Moreover, considering the extraordinary resistance that many citizens had to certain public health restrictions during the recent COVID pandemic, I believe it is unwise to stretch the definition of a "public health emergency" to encompass something that is fundamentally a public safety issue. However, even if the courts agree with that classification and accept the premise that the ban on any person carrying weapons outside the home is deemed to be sufficiently tailored to address that concern, it is a near certainty that the Emergency Order will still be found to violate both the Second Amendment of the United States Constitution and Article II, Section 6 of the New Mexico Constitution.

The Second Amendment secures "the right of the people to keep and bear arms" and the United States Supreme Court has clarified that "individual self-defense is 'the central component' of the Second Amendment right." *McDonald v. City of Chicago*, 561 U.S.

742, 767 (2010) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 599 (2008)). The Court, relying on the textual use of the word "bear," has further held that this right "naturally encompasses public carry." *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2134 (2022). Moreover, "the Second Amendment right is fully applicable to the States." *McDonald*, 561 U.S. at 750.

Although the Second Amendment "right [i]s not unlimited," *Heller*, 554 U.S. at 595, it is "among those fundamental rights necessary to our system of ordered liberty," *McDonald*, 561 U.S. at 778. Laws may appropriately regulate the right but may not infringe upon "the right of an ordinary, law-abiding citizen to . . . carry handguns publicly for their self-defense." *Bruen*, 142 S. Ct. at 2122 (emphases added). The New Mexico Constitution likewise secures the right to keep and bear arms. New Mexico's provision specifically applies to "security and defense," as well as to "lawful hunting," "recreational use," and "other lawful purposes." N.M. Const. art. II, § 6.

The *Bruen* Court emphasized that the importance of a governmental objective is irrelevant to the constitutionality of a state's regulation of firearms. If the regulation interferes with an individual's right to armed self-defense, it is presumptively unconstitutional and can only be upheld if the government is able to "affirmatively prove that its firearm regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S. Ct. at 2127. As indicated above, the novel reclassification of gun violence as a "public health emergency" appears to have been adopted as a pretext to apply the extraordinary but narrowly proscribed powers of the PHERA to prohibit all citizens, regardless of their criminal intent or conduct, to possess firearms in public. Unfortunately, it is the very novelty of this approach that places it outside the "historical tradition" of gun regulation in this country and thus unlikely to survive judicial scrutiny.

For these reasons, my office cannot undertake a defense of the Emergency Order and though we will provide a limited commission for your administration to defend these actions in the above referenced cases, I strongly encourage you to consider whether the time and energy dedicated to its defense might be better utilized in the development of a comprehensive legislative response to the problem of gun violence for the New Mexico Legislature to consider during the upcoming session.

New Mexicans recognize that there is no single solution to our public safety challenges. Instead, there is a common understanding that we must address multiple issues simultaneously and comprehensively to make a meaningful impact. We need, among other things, more and better trained police officers; stricter gun laws and tougher guidelines for pretrial detention; robust mental health and drug treatment; rehabilitation programs to reduce recidivism; real-time data on gun crimes and gun trafficking; and a protective services framework that keeps today's child victims from maturing into the next generation's repeat offenders.

Our collective efforts should thus be engaged in a robust dialogue around each of these issues, building consensus that challenges the status quo and harnessing our once-in-a-

generation budget surplus to bring about transformative change. This can only occur through the legislative process and will only occur through your committed and energetic leadership. While I understand that frustration may have led you to undertake a unilateral approach to addressing the heart-wrenching challenge of gun violence in our community, I urge you to reconsider this course of action and redouble your efforts to bring about lasting change through the democratic process. I can and will commit the resources of the Attorney General's Office to such an endeavor and stand ready to assist you in building a safer community without sacrificing the constitutional rights which we have sworn an oath to preserve, protect and defend.

Sincerely,

Raúl Torrez
Attorney General